UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NAMI BAYAN, : | |
| Plaintiff, : | |
| : | |
| v. : | Case No. 3:14-cv-00528 (VAB) |
| : | |
| GAIL SULLIVAN, : | |
| Defendant. : | |

### ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Dr. Nami Bayan ("Plaintiff"), a former participant in the Geriatric Fellowship Program at the University of Connecticut Health Center ("GFP"), initiated this one-count lawsuit against his former supervisor, Dr. Gail M. Sullivan ("Defendant"), Program Director for the GFP. Compl., ECF No. 1. Dr. Bayan claims that Dr. Sullivan discriminated against him and terminated his employment with GFP based on his national origin and religion in violation of his right to equal protection under the Fourteenth Amendment of the U.S. Constitution. *Id*.

Dr. Sullivan has moved for summary judgment, arguing that (1) Dr. Bayan's performance deficiencies, not his national origin, caused his discipline and eventual termination; (2) Dr. Sullivan was not the ultimate decision-maker regarding Dr. Bayan's discipline and termination; and (3) Dr. Sullivan is entitled to qualified immunity because her actions were objectively reasonable. Def. Mot. in Supp., ECF No. 26-1.

For the reasons set forth below, Dr. Sullivan's motion for summary judgment is **GRANTED**.

A. **FACTUAL SUMMARY**

The record reflects the following undisputed facts.

Dr. Bayan was employed as a Fellow with the University of Connecticut Geriatric Fellowship Program ("GFP") from July 2010 until June 10, 2011. L.R. 56(a)(1) ¶¶ 1-2. At the time of his application to the GFP, Dr. Bayan's references from prior employers were largely positive, though they noted that Dr. Bayan had struggled with some "interpersonal difficulties" and had challenges with "complex patients," and his record included a period of academic probation. Sullivan Aff. 4, ECF No. 26-3; Bayan Applic. Materials 3-4, 6, Def. Ex. 1, ECF No. 26-3. Dr. Bayan was hired for the GFP in July 2010. L.R. 56(a)(1) ¶ 2.

The fellowship involved doing clinical rotations at various different health centers. *Id*. at ¶ 4. Dr. Bayan began to receive negative reviews during his first clinical rotation, which was at the Hebrew Home and Hospital, in July of 2010. *Id*. at ¶ 5. Dr. Maureen Dana, the director of that site, noted in her evaluations that Dr. Bayan needed "improvement in receiving feedback." Sullivan Aff. ¶ 8; Hebrew Home Eval. 5, Def. Ex. 3, ECF No. 26-3. In and around October 2010, similar concerns were echoed by another supervisor at that site, Dr. Sharon Farber, who noted that Dr. Bayan "continues to have difficulty receiving and learning from criticism." L.R. 56(a)(1) ¶¶ 6-7; Farber Eval., Def. Ex. 4, ECF No. 26-3.

Around this time frame, a concern arose about some of Dr. Bayan's practices when diagnosing patients. L.R. 56(a)(1) ¶ 7. In response, the GFP's Clinical Competency Committee ("Ed Committee") recommended a training exercise to help Dr. Bayan improve in this area. *Id*.; Sullivan E-mail 11/19/2010, Def. Ex. 5, ECF No. 26-3. For multiple months following this recommendation, Dr. Bayan resisted participating in the training exercise. *Id*. In light of the

issues surrounding Dr. Bayan's performance and his responses to feedback, the Ed Committee drafted a remediation plan, issued November 30, 2010, recommending in part that Dr. Bayan participate in a "standardized patient clinical skills assessment" and "relax [his] defensive posture." Remediation Plan, Def. Ex. 6, ECF No. 26-3.

During a different rotation at the St. Francis Palliative Care Center, Dr. Bayan's supervisor and care team members indicated similar problems with his performance and his interpersonal interactions, including some concerns about his "difficulty relating to women or staff of 'lower status,'" his perceived inattentiveness and lack of interest, and "difficulty developing a plan of care" within the standards of the program. L.R. 56(a)(1) ¶ 9; Rowland E-mail 11/30/2010, Def. Ex. 7, ECF No. 26-3; St. Francis Eval., Def. Ex. 11, ECF No 26-3. In December 2010, Dr. Bayan communicated via e-mail with Dr. Sullivan and his clinical preceptor Dr. Kuchiel, criticizing Dr. Sullivan and others for evaluating him negatively in the remediation plan. Bayan E-mail 12/02/2010, Def. Ex. 8, ECF No. 26-3.

On January 26, 2011, during his rotation at a Veteran Affairs facility, Dr. Bayan failed to attend a scheduled osteoporosis clinic without following the proper procedures for reporting his absence. L.R. 56(a)(1) ¶ 15. Following this incident, Dr. Sullivan recommended to the Ed Committee that a Letter of Deficiency be issued to Dr. Bayan. *Id*. at ¶ 16; Sullivan E-mail 2/1/2011, Def. Ex. 13, ECF No. 26-3. Two weeks after this absence, on February 13, 2011, Dr. Bayan reported to Dr. Rathier that he had fallen on ice and suffered an injury, and he took several weeks off of work as a result. L.R. 56(a)(1) ¶¶ 19-22. His treating physician indicated that he would be able to return to light work on March 14, 2011. *Id*. at ¶ 22; Physician Letters, Def. Ex. 19, ECF No. 26-3. However, on March 16, 2011, Dr. Bayan failed to appear at a scheduled rheumatology clinic, and although he did notify one of the doctors at the clinic of his

absence, he did not notify all of the proper individuals. *Id*. at ¶ 24; Sullivan E-mail 3/18/2011, Def. Ex. 21, ECF No. 26-3.  At Dr. Sullivan's recommendation, the Ed Committee approved and issued a Letter of Deficiency on March 18, 2011.  Mar. 2011 Ltr. of Deficiency, Def. Ex. 22, ECF No. 26-3.  Dr. Bayan refused to sign the letter.  L.R. 56(a)(1) ¶ 38; Bayan E-mail 4/19/2011, Def. Ex. 35, ECF No. 26-3.

After this letter was issued, Dr. Bayan wrote multiple e-mails to Dr. Sullivan and others denying the accuracy of the negative evaluations, stating that Dr. Sullivan had "impaired judgment," and reiterating that he did not find the Letter of Deficiency to be acceptable.  L.R. 56(a)(1) ¶¶ 27-31; Def. Ex. 36; Bayan E-mail 4/11/11, Def. Ex. 27, ECF No. 26-3; Bayan E-mail 4/11/11, Def. Ex. 28, ECF No. 26-3.  These communications resulted in an Ed Committee meeting in April 2011, during which the Ed Committee approved a draft Addendum to Dr. Bayan's Letter of Deficiency, which required weekly performance evaluations and detailed increased concerns about Dr. Bayan's professionalism and interpersonal communications.  Addendum, Def. Ex. 29, ECF No. 26-3.  Following the receipt of the Addendum, Dr. Bayan continued sending e-mails to Dr. Sullivan and others objecting to the negative evaluations.  L.R. 56(a)(1) ¶¶ 35-41.

In May of 2011, the Ed Committee met and decided to extend Dr. Bayan's first year in the program from July 2011 through August 2011.  L.R. 56(a)(1) ¶¶ 42-43.  Dr. Bayan responded with e-mails to Dr. Sullivan and Dr. Kuchiel objecting to the Ed Committee's decision.  *Id*. at ¶¶ 46-49.  In these e-mails, Dr. Bayan described Dr. Sullivan as needing a "psychiatry evaluation" and as having a "poor fund of knowledge."  Bayan E-mail 5/29/11, Def. Ex. 46, ECF No. 26-3; Bayan E-mail 5/27/11, Def. Ex. 43, ECF No. 26-3.  The Ed Committee met again and decided to suspend Dr. Bayan from the program, citing concerns regarding Dr. Bayan's "professionalism

and communication skills," and they also recommended that Dr. Bayan undergo a Fitness for Duty evaluation.  L.R. 56(a)(1) ¶ 58; Suspension Letter 5/31/11, Def. Ex. 54, ECF No. 26-3.

After receiving the suspension letter, Dr. Bayan sent an e-mail referring to Dr. Sullivan as a "big fraud."  L.R. 56(a)(1) ¶ 59; Bayan E-mail 5/31/11, Def. Ex. 56, ECF No. 26-3.  In June 2011, the Ed Committee met and determined that Dr. Bayan would be terminated from the program if he refused to participate in the Fitness for Duty evaluation.  L.R. 56(a)(1) ¶ 61.  In the meantime, Dr. Bayan agreed to meet with a counselor through the GFP"s Employee Assistance Program ("EAP"), and he eventually agreed to participate in the Fitness for Duty evaluation.  *Id.* at ¶¶ 60-62.  The evaluation ultimately determined that Dr. Bayan was fit for duty, but the evaluator noted that Dr. Bayan "paints himself as the victim" and expressed concern that Dr. Bayan's conduct suggested a personality disorder.  *Id.* at ¶ 63.  In June 2011, the Ed. Committee decided to terminate Dr. Bayan from the GFP.  *Id.* at ¶ 65.  Dr. Bayan refused to sign his termination letter, and he appealed the decision three times; at each level of the appeal process, Dr. Bayan's termination was upheld.  *Id.* at ¶¶ 67-80.

### B. STANDARD OF REVIEW

The Court shall grant summary judgment if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of demonstrating the absence of a genuine dispute of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the movant has carried that initial burden, "the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011). If no reasonable jury could find in favor of the opposing party because "the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary

judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994).

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is material if it "might affect the outcome of the suit under the governing law . . . ." *Id.* Disputes concerning immaterial facts do not prevent summary judgment. *See id.*; *Howard v. Gleason Corp.*, 901 F.2d 1154, 1159 (2d Cir. 1990) ("[S]ummary judgment cannot be avoided by immaterial factual disputes."). When ruling on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the nonmoving party and draw all inferences in its favor. *Dalberth v. Xerox Corp.*, 766 F.3d 172, 182 (2d Cir. 2014).

## C. DISCUSSION

Fourteenth Amendment claims involving allegations of employment discrimination are evaluated under similar standards as those used in Title VII employment discrimination cases. *See Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) ("Most of the core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of… the Equal Protection clause"). Employment discrimination cases under the Equal Protection Clause, then, are subject to the burden-shifting standard outlined in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). *See Patterson*, 375 F.3d at 221, 225.

To overcome a motion for summary judgment under the *McDonnell Douglas* framework, "a plaintiff must first satisfy an initial burden of proving by the preponderance of the evidence a prima facie case of discrimination," at which point the burden shifts to the defendant to articulate a "legitimate, non-discriminatory reason" for the plaintiff's termination. *Robinson v. Concentra*

*Health Servs., Inc.*, 781 F.3d 42, 45 (2d Cir. 2015); *see also O'Connor v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311 (1996). Once the defendant has met its burden, Dr. Bayan's discrimination claim can only survive summary judgment if he can demonstrate that the stated nondiscriminatory reason is a "pretext for discrimination," which requires a showing "both that the reason was false, and that discrimination was the real reason." *Sanchez v. Connecticut Nat. Gas Co.*, 421 F. App'x 33, 35 (2d Cir. 2011) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).

Dr. Bayan alleges that the numerous negative evaluations of his performance during his time in the GFP, as well as his eventual termination from the program, were targeted against him because of his national origin and religion as a Muslim of Iranian nationality. Compl. at ¶ 12. In support of his allegation, he claims that similarly situated employees of European ancestry were given preferential treatment. L.R. 56(a)(2) at 6-7.

At this stage of the proceedings, however, Dr. Bayan's conclusory allegations must be supported in the record by admissible evidence. *See, e.g., Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) ("Even in the discrimination context, however, a plaintiff must provide more than conclusory allegations to resist a motion for summary judgment"); *Ruszkowski v. Kaleida Health Sys.*, 422 F. App'x 58, 61 (2d Cir. 2011) ("Appellant's conclusory statements regarding general societal attitudes toward, and harassment of, people of Polish and/or German descent and his above-average DNA and test results are insufficient to establish a prima facie case"); *Zito v. Fried, Frank, Harris, Shriver & Jacobson, LLP*, 869 F. Supp. 2d 378, 397 (S.D.N.Y. 2012) (granting summary judgment and finding that plaintiff's unsubstantiated deposition testimony, statistical analysis, and affidavits lacking in evidentiary support were insufficient to establish a prima facie case under Title VII).

As Plaintiff's counsel rightfully conceded at oral argument, other than Dr. Bayan's unsubstantiated deposition testimony, there is nothing in the record that either establishes that any other employees of the GFP were of European ancestry or provides any facts from which a jury could infer that any of them received preferential treatment in the program. There are no records or testimony from anyone or from any place where Dr. Bayan worked providing an evidentiary foundation for admissible testimony regarding his claims. Under such circumstances, and at this stage of the proceedings, a plaintiff fails to meet his burden.

Even if this Court held that Dr. Bayan's unsubstantiated testimony was sufficient to establish a prima facie discrimination case, *McGuinness v. Lincoln Hall*, 263 F.3d 49, 53 (2d Cir. 2001) ("the burden of establishing this prima facie case in employment discrimination cases is minimal"), a prima facie discrimination case is not sufficient to survive a motion for summary judgment where the defendant articulates a non-discriminatory reason for the allegedly discriminatory conduct. *See James v. New York Racing Ass'n*, 233 F.3d 149, 154 (2d Cir. 2000) ("once the employer articulates a non-discriminatory reason for its actions, the presumption completely drops out of the picture. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated remains at all times with the plaintiff.") (internal quotes and citations omitted).

In support of her motion for summary judgment, Dr. Sullivan has presented more than ample evidence that there was a legitimate, non-discriminatory reason for each of the disciplinary actions taken against Dr. Bayan during his employment with the GFP. The record is replete with evidence of Dr. Bayan"s difficulties interacting with patients and staff, his persistent inability to receive feedback, and his record of written communications that could reasonably be

interpreted as unprofessional and defensive. Def. Ex. 3; Def. Ex. 4; Def. Ex. 7; Def. Ex. 8; Def. Ex. 11; Def. Ex. 43; Def. Ex. 46; Def. Ex. 56; Def. Ex. 60. In his 56(a)(2) statement, Dr. Bayan admits to the vast majority of the facts set forth by Dr. Sullivan. L.R. 56(a)(2) ¶¶ 1-90.

It is well-established that in order to meet her burden under the *McDonnell-Douglas* framework, Dr. Sullivan must articulate a non-discriminatory reason for Dr. Bayan's termination. *See St. Mary's Honor Center*, 509 U.S. at 509 ("By producing *evidence* (whether ultimately persuasive or not) of nondiscriminatory reasons, petitioners sustained their burden of production"); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 260 (1981) ("When the plaintiff has proved a prima facie case of discrimination, the defendant bears only the burden of explaining clearly the nondiscriminatory reasons for its actions"). The record is clear that Dr. Sullivan has sufficiently articulated a non-discriminatory reason for Dr. Bayan's termination: serious concerns about his behavior, resulting in various disciplinary actions and corrective steps being taken during his employment with the GFP.

Dr. Bayan has not presented any evidence that the stated reasons for his termination were pretextual. Pl. Mem. in Opp., ECF No. 27. In his deposition testimony, Dr.Bayan asserts that Dr. Sullivan once described a different physician of European ancestry as being a "better physician" than Dr. Bayan and that, at one point, Dr. Sullivan provided that physician with a laptop without providing one to Dr. Bayan. Bayan Dep., ECF No. 26-6; L.R. 56(a)(2); Compl. ¶¶ 10-11, ECF No. 1. Apart from his general description of these alleged incidents, Dr. Bayan has not articulated any basis in fact for his claim that the discipline taken against him was due to his identity as an Iranian and/or as a Muslim. *Id.*; Pl. Mem. in Opp., ECF No. 27.

The alleged "better physician" comment by Dr. Sullivan, without more, cannot support a claim for discrimination. In the absence of evidence regarding the respective qualifications or

professional attributes of the other physician, there is nothing in the record from which a reasonable juror could infer that this comment was based on national origin as opposed to this individual's abilities as a physician. Even if the comment could be construed as discriminatory and therefore probative of Dr. Bayan's discrimination claim, "stray remarks alone do not support a discrimination suit" and will not allow an employment discrimination case to survive summary judgment. *Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 56 (2d Cir. 1998) (internal quotation marks omitted). Even stray remarks from a decision-maker "do not constitute sufficient evidence to make out a case of employment discrimination," without more. *Id*. Apart from Dr. Bayan's own general assertions that he had "superior knowledge and intelligence" to this other physician, Bayan Dep. at 25, Dr. Bayan has not provided any details connecting Dr. Sullivan's remark to the adverse employment actions taken against Dr. Bayan. *See Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010) (the "more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination").

Similarly, Dr. Bayan's allegation that Dr. Sullivan once provided this European physician with a laptop does not support Dr. Bayan's claim of discrimination. Bayan Dep. at 20. Other than Dr. Bayan's own unsubstantiated deposition testimony, there is no evidence from which a reasonable juror could conclude that this one-time laptop incident is probative of discrimination. *See, e.g. Univ. of Texas Sw. Med. Ctr. v. Nassar,* 133 S. Ct. 2517, 2520 (2013) ("An employee alleging status-based discrimination … [must] show that the motive to discriminate was one of the employer's motives"); *Payton v. City Univ. Of New York*, 453 F. Supp. 2d 775, 785 (S.D.N.Y. 2006) ("Nor can 'offhand comments,' 'isolated incidents,' 'stray remarks,' or [plaintiff]'s subjective belief constitute a viable [race discrimination] claim").[1]

---

[1] Notably, the record is so scant on this alleged incident that it is unclear whether laptops are ordinarily provided to physicians in the GFP and, if so, under what circumstances.

Viewing all evidence in the light most favorable to the plaintiff, Dr. Bayan "cannot point to any evidence sufficient to permit a rational trier of fact to conclude that the adverse employment action was more likely than not motivated by unlawful discriminatory animus based on his protected status." *Sanchez*, 421 F. App'x at 35; *see also Zito*, 869 F. Supp. 2d at 397 ("The Plaintiff's allegations are speculative, cited to and based on her own testimony, and do not provide any evidence that the elimination of her position . . . was a pretext of gender discrimination").

Accordingly, the Court does not need to reach Dr. Sullivan's arguments regarding qualified immunity or her decision-making authority with respect to Dr. Bayan's termination, and Dr. Bayan's equal protection claim fails as a matter of law.

### D. CONCLUSION

Dr. Sullivan's Motion for Summary Judgment is **GRANTED**.

SO ORDERED at Bridgeport, Connecticut this 30th day of September, 2016.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE